IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| NOEMÍ RODRÍGUEZ RÍOS,<br><br>  Plaintiff,<br><br>v.<br><br>DEPARTMENT OF EDUCATION OF THE COMMONWEALTH OF PUERTO RICO AND NORMA CRUZ ECHEVARRÍA,<br><br>  Defendants. | CIVIL NO.: 10-1143(ADC/SCC) |

**REPORT AND RECOMMENDATION**

Plaintiff Noemí Rodríguez-Ríos sued her employer, the Department of Education of the Commonwealth of Puerto Rico ("the Department") and her direct supervisor Norma Cruz-Echevarría ("Cruz"), alleging violations of Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. §§ 2000e to e-17, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634, the American with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101-12213, the Rehabilitation Act, 29 U.S.C. § 794, section 1983, 42 U.S.C. § 1983, and various Puerto Rican statutes. Docket No. 1. Defendants moved for summary judgment, Docket No. 31, and that motion was referred to this court for a report and recommendation. Docket No. 51.

**I.    Factual Background**

The following facts are derived from the parties' motions, statements of uncontested material facts, and exhibits.

For almost thirty years, Plaintiff was a teacher employed by the Department. Docket No. 1,

Rodríguez-Ríos v. Dep't of Educ. of P.R.
Civil No. 10-1143(ADC/SCC)
Report and Recommendation
Page No. 2

¶ 9. At the time of the events giving rise to this suit, Plaintiff taught English at the Alcides Intermediary Public School in Añasco. Id. In 2006 and 2007, Plaintiff was investigated by the Puerto Rican Department of Family for a number of incidents of mistreatment and institutional neglect. See Docket No. 41-1. These allegations, which included complaints of physical and emotional mistreatment (including a threat that she would haunt a child after he died), resulted in a six month suspension without pay from her job. Docket No. 41-4. She was additionally suspended with pay pending investigation and therefore was out of her job from September 2007 to February 2009. Docket No. 32-5, at 1-2.[1]

Shortly after Plaintiff returned from suspension, Defendant Cruz became the school's principal, and therefore Plaintiff's immediate supervisor. Docket No. 32, ¶ 21. Plaintiff had received

---

[1] The facts in this paragraph, as well as other facts relating to the abuse allegations, are drawn from Defendants' statement of uncontested facts, Docket No. 32, and all are supported by record citations as required by Local Rule 56(e). Plaintiff apparently intended to deny each of these facts, but she failed to comply with Local 56(c) and support her denials with record citations. Instead, as to some twenty proposed uncontested facts, Plaintiff repeats, verbatim, a page-long and largely unintelligible denial full of citations to irrelevant case law. See Docket No. 47, ¶¶ 3-19, 45-49, 51-52. Plaintiff suggests that each of these facts should not be considered because their probative value is "substantially outweighed by the danger of unfair prejudice and misleading the jury." See Fed. R. Evid. 403. As Plaintiff herself admits, though, Rule 403 is meant to protect the jury, not the judge, from prejudicial evidence, and it accordingly has less relevance at the summary judgment stage. See Elwell v. Conair, Inc., 145 F. Supp. 2d 79, 84 (D. Me. 2001) ("At the summary judgment stage, asking a court to strike material from an affidavit on the ground that the material [is inadmissible under Rule 403] is itself a waste of the court's time."). Thus, while courts have the power to exclude prejudicial evidence on summary judgment, it is a power that should be used sparingly because the balancing that Rule 403 requires is better made at trial. See Ramirez-Rodriguez v. Boehringer Ingelheim Pharms., Inc., 425 F.3d 67, 77 n.10 (1st Cir. 2005) (citing Jack B. Weinstein & Margaret A. Berger, 2 Weinstein's Federal Evidence § 403.02[1][b] (2d ed. 2005)); see also Adams v. Ameritech Servs., Inc., 231 F.3d 414, 428 (7th Cir. 2001) ("[W]hile it is not unheard of to exclude evidence under Rule 403 at the summary judgment stage . . . normally the balancing process contemplated by that rule is best undertaken at the trial itself."). Plaintiff's prejudice argument is vague and undeveloped, and it will not be considered at this time. These facts are therefore deemed admitted. Local Rule 56(e).

Rodríguez-Ríos v. Dep't of Educ. of P.R.
Civil No. 10-1143(ADC/SCC)
Report and Recommendation
Page No. 3

accommodation for her disability from 2001 until 2007,[2] when she was suspended. Docket No. 47-1, at 8. She was denied accommodation during the 2007-2008 school year, however, because the Department of Education could not evaluate her request for reasonable accommodation while she was not working at the school. Docket No. 41-6. After returning to work, Plaintiff wrote Cruz, requesting a reasonable accommodation and a wireless laptop.[3] Subsequently, Plaintiff met with Cruz and was given ADA-related literature and informed of the documentation she would need to complete in order to have her disability accommodated. Docket No. 41-8. Because Plaintiff had been out of school for nearly two years, she was required to apply for accommodation as a new case, not as a renewal case. Docket No. 41-10. Cruz scheduled a meeting with Plaintiff at which they could discuss Plaintiff's request, Docket No. 41-11, but Plaintiff failed to attend the meeting. Docket No. 41-12. According to a certification from the director of the Department's Employee Assistance Request, no request for reasonable accommodation was made by plaintiff for the 2009-2010 academic year.[4] Docket No. 41-13.

---

[2] Incredibly, Plaintiff nowhere specifies the nature of her alleged disability, and an examination of the entire record yields little by way of specifics. As best as we can tell, Plaintiff suffers from an unspecified hearing condition, Docket No. 32-38, and intense noise may cause her pain and vertigo. Docket No. 41-17, ¶ 3.

[3] The record is unclear as to whether the laptop was requested as a type of reasonable accommodation or whether it was requested in addition to other reasonable accommodation. The Defendants' statement of uncontested facts presents the request for the laptop as separate from what they call her request for "unspecified reasonable accommodation." Docket No. 32, ¶ 28. If the laptop was meant as a type of reasonable accommodation, Plaintiff's letter makes no mention of how it would accommodate her disability. Docket No. 41-7.

[4] Plaintiff claims that she attempted to file but that Cruz refused to accept her documentation. Docket No. 47,

The following academic year, in June 2010, Plaintiff again requested reasonable accommodation, but she again failed to specify what that accommodation might be necessary. Docket No. 32-20.[5] Plaintiff met with Cruz and gave her the reasonable accommodation petition, which Cruz needed to sign for the petition to go forward. Docket No. 41-14. Two months later, Plaintiff again wrote Cruz, requesting that she look at Plaintiff's documentation so that the petition could be submitted. Docket No. 32-22. The two then met, though Plaintiff asked not to be alone with Cruz and authorized a secretary to be present for the meeting. Docket No. 41-17, ¶ 1. At the meeting, Plaintiff requested a laptop, a teacher's assistant, and a microphone with which she could give oral presentations. Id. ¶ 2. The recommendations of her doctors were also analyzed, and to the extent that the minutes of this portion of the meeting are comprehensible, it appears that it was recommended that she not have consecutive class groups and that she avoid intense noise, as it might trigger vertigo and pain.[6] Id. ¶ 3. The minutes of the meeting also indicate that Plaintiff did not trust Cruz and refused to submit the required medical records to her. Id. ¶¶ 4, 6. Accordingly, Plaintiff requested that the regional office handle the accommodation process for her. Id. ¶ 6. Plaintiff apparently

---

¶ 31; Docket No. 47-1, at 2.

[5] Plaintiff purports to deny this fact, but she then simply repeats the fact in substance and cites to the Defendants' statement of uncontested facts. Docket No. 47, ¶ 32. Because the substance of Plaintiff's denial cannot be determined, the fact is deemed admitted. See Local Rule 56(e).

[6] The minutes of the meeting were handwritten in Spanish, Docket No. 32-26, and a certified translation was submitted to the court. Docket No. 41-17. The translator's notation indicates that the paragraph in question was largely illegible in the original document, but that there were two additional recommendations written down. Id. ¶ 3. No party appears to recall what the substance of these recommendations were. Docket No. 32, ¶ 38.

submitted her accommodation petition after the meeting, but she thereafter received a notice from the Employee Assistance Program informing her that her application was deficient because it lacked the signature of her supervisor and the signed minutes of the agreement between them. Docket No. 41-18. Plaintiff claims that she could not complete the application because Cruz refused to sign them after learning of Plaintiff's distrust of her. Docket No. 47-1, at 4. In any case, Plaintiff does appear to have refused to hand over her medical records to Cruz, though she did apparently show them to her. Docket No. 47-1, at 5.

On September 30, Plaintiff informed Cruz that she would retire effective October 14, 2010. Docket No. 32-29. Plaintiff alleges that her decision to retire was motivated by the discrimination she suffered at the hands of Cruz and the Department. Docket No. 47, ¶ 41. She claims that she was hectored into retiring, receiving comments like "why don't you retire?" and "if I was you, I would retire." Docket No. 32-38. The EEOC issued her a right to sue letter on November 20, 2009. Docket No. 32-40.

Plaintiff's allegations about what discrimination she suffered at the hands of the Department and Cruz are difficult to parse. Several potential acts of discrimination, such as her claim that she was denied a union representative at some unspecified meeting, would seem to be covered by a case

running parallel to this one.[7] See Docket No. 4, ¶ 29.[8] Others are factually impossible, such as her claim that Cruz removed her from her job in 2007, id. ¶ 34, despite their never having met before June 2009. Docket No. 32-10. And, on the whole, Plaintiff's filings in this case exist entirely on the precipice of incomprehensibility, slipping, occasionally, over the edge. At many points, the discrete words used in the pleadings suggest that Plaintiff wishes to allege *something*, but it is not possible to tell what.[9] This failing is important because, while summary judgment places the burden of proof upon the Defendants, and while we have done our best to understand Plaintiff's filings, we cannot conclude that there are genuine disputes of material fact suitable for trial when we cannot even tell what Plaintiff thinks happened. Cf. Rodriguez v. Municipality of San Juan, No. 09-1769, 2011 WL 5007161 (1st Cir. Oct. 20, 2011) (noting that judges "are not mind readers" and that it is therefore incumbent upon parties to write clearly, "highlighting the relevant facts and analyzing on-point

---

[7]Plaintiff has apparently filed a complaint with the Equal Opportunity Employment Commission ("EEOC") in 2009 focusing on alleged discrimination she suffered related to the various complaints filed against her and investigated by the district. Docket No. 4, ¶¶ 4-6. She has never sued pursuant to this complaint, however, because she continues to seek reconsideration by the EEOC. Id. ¶ 4.

[8]This paragraph also refers to a "defendant-Director Oliveras," Docket No. 4, ¶ 29, but no one named Oliveras is a party to this suit.

[9]For example, one paragraph reads, in full: "Said December 17, 2009 evident was when the School Social Worker was present and did have any contact with defendant Cruz." Docket No. 4, ¶ 32. Even correcting the obvious mistakes, this paragraph's point is mysterious because the complaint nowhere else refers to an incident on December 17, 2009. And in the next paragraph, Plaintiff says she filed a complaint "against defendant on that same December 17, 2009." Id. ¶ 33. But, of course, any indication as to the contents of that report, or with whom it was filed, is entirely absent.

authority," because "arguments confusingly constructed and lacking in coherence" will be ignored (internal quotation marks omitted)).

We have nonetheless done our best to understand Plaintiff's allegations of discrimination and retaliation, which include the following: Sometime in or around 2007, Plaintiff made a series of complaints to various entities, including the EEOC, the Department, her union, and the Puerto Rican Police Department. Docket No. 4, ¶¶ 4-5. These complaints apparently alleged age and disability discrimination, and she eventually received a right to sue letter on which she has never acted. Id. ¶ 3. She also filed an additional EEOC complaint, which resulted in this suit. Id. Plaintiff also alleges that when she asked for ADA accommodation, that accommodation was denied because Plaintiff required a Title I teacher,[10] the only one of whom employed by the school was then working as a personal assistant to Cruz. Docket No. 4, ¶ 6. Plaintiff further alleges that Cruz maliciously filed criminal charges against her and likewise induced students' families to file charges against her. Docket No. 4, ¶¶ 31, 34.

**II. Summary Judgment Standard**

A motion for summary judgment will be granted "if the pleadings, the discovery and disclosure material on file, and any affidavits show that there is no genuine dispute as to any material

---

[10]Title I of the Elementary and Secondary Education Act of 1965 is intended to increase students' education opportunities by channeling federal money to state education agencies, which can then use that federal money to assist qualifying students in need of special and remedial assistance. See Agostini v. Felton, 521 U.S. 203, 208 (1997). A Title I teacher is one "employed in a role supplemental to that of a classroom teacher" whose role is primarily to provide "tutorial services for students experiencing difficulties in basic skills." Scharnhorst v. Indep. Sch. Dist. No. 710, 686 F.2d 637, 639 (8th Cir. 1982). Plaintiff does not make clear the relationship between Title I teachers and accommodation under the ADA.

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is in genuine dispute if it could be resolved in favor of either party, and it is material if it potentially affects the outcome of the case. Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004).

The movant carries the burden of establishing that there is no genuine dispute as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). This burden may be satisfied by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations . . . or other materials." Fed. R. Civ. P. 56(c)(1)(A). The movant may also point to a lack of evidence supporting the nonmovant's case. See Fed. R. Civ. P. 56(c)(1)(B); see also Celotex, 477 U.S. at 325. Once the movant makes a preliminary showing that no genuine issues of material fact exist, "the nonmovant must produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy [dispute]." Clifford v. Barnhart, 449 F.3d 276, 280 (1st Cir. 2006) (internal quotation marks omitted); see also Fed. R. Civ. P. 56(c)(1).

In evaluating a motion for summary judgment, we view the record in the light most favorable to the nonmovant. See Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 150-51 (2000). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

### III. The Federal Claims

### A. Title VII

Plaintiff seeks relief under Title VII, which prohibits employers from "fail[ing] or refus[ing] to hire . . . or discharg[ing] any individual, or otherwise . . . discriminating against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's" membership in a protected class. 42 U.S.C. § 2000e-2(a)(1). In addition to prohibiting discrete acts of employment discrimination, such as termination or refusal to hire, Title VII also prohibits employers from requiring employees "to work in a discriminatorily hostile or abusive environment." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 116 (2002). Title VII also prohibits employers from retaliating against employees who seek its protection. See 42 U.S.C. § 2002e-3(a).

Title VII protects employees who are discriminated against based upon "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). However, Plaintiff nowhere alleges that she suffered discrimination as a result of her membership in any protected class, and no evidence of any such discrimination can be found in the record. Title VII's substantive provisions are therefore inapplicable. Likewise, Plaintiff cannot make a Title VII retaliation claim because an essential element of such a claim is that Plaintiff sought protection under Title VII, such as by filing a complaint under the statute. 42 U.S.C. § 2000e-3(a); see also Mariani-Colon v. Dep't of Homeland Sec., 511 F.3d 216, 223 (1st Cir. 2007) (laying out the elements of a Title VII retaliation claim). Plaintiff does not appear to have ever sought protection under Title VII.

### B. The ADEA

The ADEA prohibits employers from taking adverse employment actions against an employee who is forty years of age or older because of the employee's age. Bennett v. Saint-Gobain Corp., 507 F.3d 23, 30 (1st Cir. 2007) (citing 29 U.S.C. §§ 623(a)(1), 631(a)). Plaintiff alleges that she was subjected to a hostile work environment and that she was retaliated against because she complained about the harassment.

#### 1. Hostile Work Environment

Though hostile work environment claims originated in the context of sex discrimination, they have been recognized for members of any protected class. Rivera-Rodriguez v. Frito Lay Snacks Caribbean, 265 F.3d 15, 24 (1st Cir. 2001) (recognizing hostile work environment claim under ADEA). An ADEA hostile work environment claimant, like a claimant under Title VII, "must provide sufficient evidence from which a reasonable jury could conclude that the offensive conduct is severe and pervasive enough to create an objectively hostile or abusive work environment and is subjectively perceived by the victim as abusive." Id. (internal quotations and citations omitted). However, unlike Title VII, the ADEA does not permit compensatory damages for pain and suffering. Collazo v. Nicholson, 535 F.3d 41, 45 (1st Cir. 2008). Instead, damages are authorized only for "those pecuniary benefits connected to the job relation, including unpaid wages or overtime compensation." Id. at 44-45 (internal quotations and citations omitted).

Plaintiff's complaint makes no allegations of actual specific acts of age discrimination, but she did state, in a deposition, that Cruz had told her, "If I was you, I would retire." Docket No. 32-38.

Without more, this comment is insufficient to support a hostile work environment claim because a few comments suggesting retirement, even if rude or made with ill intent, do not constitute "objectively and subjectively offensive" behavior that "a reasonable person would find hostile or abusive." Carmona-Rivera v. Commonwealth of P.R., 464 F.3d 14, 19 (1st Cir. 2006) (internal quotations omitted); cf. Noviello v. City of Boston, 398 F.3d 76, 92 (1st Cir. 2005) (noting that "rudeness or ostracism, standing alone, usually is not enough to support a hostile work environment claim").

### 2. Retaliation

ADEA claims follow the same burden-shifting framework as claims under Title VII. Fennell v. First Step Designs, 83 F.3d 526, 535 (1st Cir. 1996). Under this framework, Plaintiff must make a prima facie showing of retaliation. Id. Once that showing has been made, the burden shifts to the defendant to "articulate a legitimate, non-retaliatory reason for its employment decision." Id. If defendant does so, the burden again shifts to Plaintiff, who must show that the "proffered legitimate reason is in fact a pretext and that the job action was the result of the defendant's retaliatory animus." Id. A plaintiff can make a prima facie case of retaliation by showing that (1) she engaged in ADEA-protected conduct; (2) she was subjected to an adverse employment action; and (3) "a causal connection existed between the protected conduct and the adverse action." Mojica v. El Conquistador Resort & Golden Door Spa, 714 F. Supp. 2d 241, 261 (D.P.R. 2010). An adverse employment action is one that "might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53, 68

(2006).

Plaintiff's complaint does a poor job of creating a time line of the events that comprise this case, and it is therefore difficult to determine what alleged discriminatory actions might have been in retaliation for what protected activity. More crucially, however, Plaintiff fails to bring any evidence that shows a causal relationship between her protected conduct and the treatment she received. She filed an EEOC complaint in April 2009 alleging, among other things, age discrimination, Docket No. 4, at ¶ 4, but she did not meet Cruz, the agent of most of the alleged retaliatory actions, until June of that year. Docket No. 32-10. It is therefore difficult to attribute any of Cruz's actions to an intent to discriminate against Plaintiff on the basis of her protected conduct. And even assuming Cruz did know of the complaint, and did take an adverse action against the Plaintiff, that action "must have been made for the *purpose* of retaliating . . . [a]nd to defeat summary judgment [she] must point to *some* evidence of retaliation by a pertinent decision maker." Randlett v. Shalala, 118 F.3d 857, 862 (1st Cir. 1997). Plaintiff points to no such evidence, and her entire substantive response to the motion for summary judgment's ADEA arguments is a sentence concluding that there are material facts in dispute.[11] Docket No. 46, at 10.

**C.    The ADA**

The ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, . . . advancement, or discharge of employees, . . . and other

---

[11]"The motion does not raise sufficient facts that warrant the granting of its motion and must be denied as there are material facts in dispute." Docket No. 46, at 10.

terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).[12] Plaintiff alleges that her requests for accommodation were improperly denied and that she was discriminated and retaliated against on account of disability. An individual is disabled if she "(1) has a physical or mental impairment which substantially limits one or more major life activities, (2) has a record of such impairment, or (3) is regarded as having such an impairment." Quiles-Quiles v. Henderson, 439 F.3d 1, 5 (1st Cir. 2006).

The ADA prohibits discrimination against the disabled in three realms of life: Title I prohibits discrimination in employment; Title II prohibits discrimination in access to public services; and Title III prohibits discrimination in public accommodations. 42 U.S.C. §§ 12112, 12132, 12182. The Supreme Court has held that actions for money damage under Title I are barred by the states' Eleventh Amendment immunity. Bd. of Trs. of the Univ. of Ala. v. Garrett, 531 U.S. 356, 374 (2001). Here, Plaintiff seeks damages for her employer's failure to accommodate her disability, and her suit is therefore under Title I of the ADA.[13] Accordingly, her claims for damages under the ADA are barred because the Department is an arm of the Puerto Rican government and is shielded by its

---

[12] We treat Plaintiff's claims under the Rehabilitation Act along as concomitant with her claims under the ADA. See Sepulveda-Villarini v. Dep't of Educ. of P.R., 628 F.3d 25, 26 (1st Cir. 2010) (Souter, J.).

[13] Plaintiff's memorandum of law in opposition to summary judgment implies that this is a claim under Title II of the ADA, but does not explain how this case falls under that Title rather than Title I. Docket No. 46, at 7. Given that her complaint alleges employment discrimination, we consider it under Title I.

Rodríguez-Ríos v. Dep't of Educ. of P.R.
Civil No. 10-1143(ADC/SCC)
Report and Recommendation
Page No. 14

immunity.[14] Id.; see also Cardona-Roman v. Univ. of P.R., No. 10-1363(DRD), 2011 U.S. Dist. LEXIS 82509, *14-15 (D.P.R. July 27, 2011) (finding ADA employment discrimination suit against the University of Puerto Rico barred by Eleventh Amendment immunity).

### D.     Section 1983

Plaintiff additionally brings claims against Cruz for violations of her constitutional rights. Docket No. 4, ¶¶ 11, 38. She seems to allege that Cruz violated her right under the First Amendment to be free from retaliation for protected speech and her Fourteenth Amendment right to equal protection under the laws. Id.[15]

### 1.     First Amendment Retaliation

Plaintiff alleges that Cruz retaliated against her for her protected speech, in violation of the First Amendment. Public employees "do not forego all the protections of the First Amendment by virtue of working for the government." Foley v. Town of Randolph, 598 F.3d 1, 5 (1st Cir. 2010). Therefore, "[r]etaliation, though it is not expressly referred to in the Constitution, is nonetheless actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights." Powell v. Alexander, 391 F.3d 1, 16-17 (1st Cir. 2004). A public employee's First Amendment

---

[14] Plaintiff concedes that her equitable and declaratory relief claims are mooted by her retirement, and they are therefore not considered. Docket No. 46, at 7.

[15] "As a direct and proximate cause of defendants equal protection based upon 42 section 1983 Equal Protection and discrimination based upon Age, Reprisal and ADA denial for reasonable accommodations has caused emotional distress to plaintiff, which consists to date." Docket No. 4, ¶ 38.

14

retaliation claim is judged by whether (1) "the employee spoke as a citizen on a matter of public concern," (2) "the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public," and (3) "the plaintiff can show that the protected expression was a substantial or motivating factor in the adverse employment action." Curran v. Cousins, 509 F.3d 36, 45 (1st Cir. 2007) (internal quotations omitted). The plaintiff must therefore show that she "engaged in constitutionally protected conduct" which was "a substantial or motivating factor in the alleged adverse employment action." Welch v. Ciampa, 542 U.S. 927, 936 (1st Cir. 2007). The "standard for showing an adverse employment action is lower in the First Amendment Context than it is" in the context of Title VII or the ADA. Rivera-Jimenez v. Pierluisi, 362 F.3d 87, 94 (1st Cir. 2004). An employment action is adverse if it "would have a chilling effect on the employee's exercise of First Amendment Rights. Barton v. Clancy, 632 F.3d 9, 29 (1st Cir. 2011); see also Agosto-de-Feliciano v. Aponte-Roque, 889 F.2d 1209, 1217 (1st Cir. 1989) (en banc) (holding that an action is adverse where it would deter "a reasonably hardy individual[]" from exercising her First Amendment rights"). Plaintiff must also show that "there is a genuine issue of material fact as to whether" the adverse employment action "was substantially motivated" by an impermissible retaliatory motive. Welch, 542 F.3d at 940. It is insufficient that the adverse action came after the protected speech, but Plaintiff need not "produce 'smoking gun' evidence of an employer's impermissible motive." Id.

We find that Plaintiff's constitutional retaliation claim fails because of the record's lack of any evidence that would tie any of the alleged retaliatory employment actions to a retaliatory motive.

Prior to the complaint that forms the basis for this case, it appears that all of Plaintiff's previous complaints to her employer or any governmental agency, at least so far as can be gleaned from the record, occurred prior to Cruz becoming principal, and Plaintiff points to no evidence that she was even aware of them. There is, moreover, essentially no evidence, apart from the allegations in the complaint, that the retaliatory conduct even occurred. Plaintiff refers to criminal charges that she says were falsely filed against her by Cruz, Docket No. 4, ¶ 34, but she points to nothing in the record, not even an affidavit or a statement in her own deposition, that supports the fact that charges were ever filed, much less falsely.[16] Because plaintiff has produced no evidence of retaliatory motive, we find that summary judgment dismissing Plaintiff's retaliation claim is warranted.

### 2. Equal Protection

The Equal Protection Clause of the Fourteenth Amendment "contemplates that similarly situated persons are to receive substantially similar treatment from their government." Tapalian v. Tusino, 377 F.3d 1, 5 (1st Cir. 2004). A plaintiff alleging an equal protection violation must therefore show that, "compared to others similarly situated, [she] was selectively treated . . . based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Barrington Cove Ltd. P'ship

---

[16] This analysis is particularly difficult because Plaintiff barely responds to the motion for summary judgment as to the section 1983 claims. See Docket No. 46, at 8. She cites only a few cases, all for extremely vague propositions, and makes no effort whatsoever to apply the law to the facts of this case—something that would be particularly helpful here, where we lack clarity as to what she thinks the alleged facts are. See United States v. Zannino, 895 F.2d 1, 16 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation are deemed waived. . . ."); see also Mitchell v. City of Moore, 218 F.3d 1190, 1199 (10th Cir. 2000) ("The district court was not obligated to comb the record in order to make [the plaintiff's] argument for him.").

Rodríguez-Ríos v. Dep't of Educ. of P.R.
Civil No. 10-1143(ADC/SCC)
Report and Recommendation
Page No. 17

v. R.I. Hous. & Mortgage Fin. Corp., 246 F.3d 1, 7 (1st Cir. 2001). A necessary element in an equal protection claim is proof of intent to discriminate. Soto v. Flores, 103 F.3d 1056, 1067 (1st Cir. 1997). Plaintiff fails to specify the basis for her equal protection claim, but we assume that she is alleging discrimination on the basis of disability.[17] We find, however, that as with her ADEA retaliation claims, Plaintiff has failed to point to evidence that Cruz took any adverse action against her because of her disability at all, much less acted with malice or in bad faith. See Baker v. Coxe, 230 F.3d 470, 474 (1st Cir. 2000) (explaining the bad faith and malice standard). Summary judgment is therefore proper.

### IV. Commonwealth Law Claims

Plaintiff's supplemental Commonwealth claims should be dismissed because their jurisdictional basis would be undermined by the dismissal of the federal claims.

### V. Conclusion

For the reasons states above, we recommend that the court GRANT the motion for summary judgment, Docket No. 31, and DISMISS Plaintiff's complaint, Docket No. 4, in its entirety.

IT IS SO RECOMMENDED.

The parties have fourteen days to file any objections to this report and recommendation.

---

[17] Which, it should be noted, is not a protected class for the purposes of section 1983. Accordingly, even if Plaintiff successfully alleged that she was discriminated against on the basis of her disability, a showing that the discrimination had a rational basis would defeat liability. Bd. of Trs. of the Univ. of Ala. v. Garrett, 531 U.S. 356, 366 (2001) (noting that disability is not a suspect class and that the proper standard of review for disability classification is rational basis).

17

Rodríguez-Ríos v. Dep't of Educ. of P.R.
Civil No. 10-1143(ADC/SCC)
Report and Recommendation
Page No. 18

Failure to file same within the specified time waives the right to appeal this report and recommendation. Henley Drilling Co. v. McGee, 36 F.3d 143, 150-41 (1st Cir. 1994); United States v. Valencia, 792 F.2d 4 (1st Cir. 1986).

    San Juan, Puerto Rico, this 21st day of November, 2011.

                                    S/ SILVIA CARREÑO COLL
                                    UNITED STATES MAGISTRATE JUDGE